IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Petitioner/Applicant,

      v.

KRONOS INCORPORATED,

      Respondent.

09mc0079

**ELECTRONICALLY
FILED**

## Memorandum Opinion

I. <u>Background</u>

      A. <u>Summary of Procedural History</u>

      This miscellaneous action has a long and varied procedural history dating

back to March 19, 2009, when Petitioner/Applicant, the Equal Employment

Opportunity Commission (hereinafter "EEOC" or "Applicant"), filed an action for

enforcement of its Administrative Subpoena, against third-party (non-party)

respondent, Kronos Incorporated (hereinafter "Kronos" or "Respondent").

Although the texts of the original Subpoenas[1] will be outlined below, the general

nature of the Subpoenas related to the EEOC's investigation of potential disability

---

[1] As outlined below, the EEOC filed two separate Subpoenas. The second Subpoena is the subject of this miscellaneous action.

and racial discrimination in connection with Respondent's creation and marketing of a Personality Assessment Instrument (hereinafter "Assessment") that was administered by the Kroger Company to job applicants, including job applicant Vicky Sandy, on whose behalf a charge was filed and entitled Sandy v. Kroger Food Stores, Charge No. 533-2007-01236.

This miscellaneous action was assigned to this Court pursuant to its duty to handle all miscellaneous cases during the two week period in which this action was commenced. Applicant, EEOC, initially filed a motion for order to show cause why an Order should not issue directing Respondent, Kronos to comply with the Subpoena and to cooperate with the EEOC in discussing the form of data production and logistics prior to production.

Respondent Kronos objected to the enforcement of said Subpoena on the basis that it "grossly overstepp[ed] the wide, but carefully crafted boundaries Congress placed on EEOC's investigative authority." Doc. No. 11 at 1. After extensive briefing, on June 1, 2009, this Court entered an Order granting in part and denying in part the EEOC's request to enforce its Subpoena, and "redrafted" the original Subpoena to include certain limitations as to scope, time, and geography of the information requested. Doc. No. 16. It is important to note, however, that while the Court denied any request beyond the scope of the "redrafted" Subpoena, the Court was careful to word that denial to be *without*

*prejudice* for the EEOC to re-apply, after the conclusion of discovery, for any additional specific documents. *Id*. at 3.

The Court also ordered the parties to enter into an appropriate Confidentiality Order to protect Kronos' trade secrets or confidential information and the personal information of persons taking the Assessment. Doc. No. 16 at 4. When the parties failed to agree on the necessity and/or language of a Confidentiality Order, on July 22, 2009, the Court entered an Order (with some handwritten modifications/additions) adopting Kronos' proposed Confidentiality Order. Doc. No. 28.

Instead of either conducting said discovery and re-petitioning the Court for further information or filing any motion for reconsideration, on July 28, 2009, the EEOC filed a notice of appeal before the United States Court of Appeals for the Third Circuit of this Court's rulings. On September 9, 2010, this Court received the Judgment of the United States Court of Appeals for the Third Circuit, wherein the Order of this Court regarding compliance with the Subpoena (doc. no. 16) was affirmed in part and reversed in part, and the Confidentiality Order entered by this Court was vacated and remanded for further proceedings (doc. no. 28). Doc. No. 31. This Court received the mandate of the United States Court of Appeals for the Third Circuit on November 9, 2010 (along with the Opinion of the Court of Appeals). Doc. No. 32.

The specifics of the Opinion by the Court of Appeals will be detailed below, but in general, the Court of Appeals reversed this Court's "redrafted" Subpoena Order to the extent that this Court set any boundaries as to scope, time, and geography as to the claims brought pursuant to the ADA. The Court of Appeals, however, affirmed this Court's ruling to the extent that EEOC sought information regarding racial discrimination. Essentially, the Court of Appeals determined that the Subpoena at issue (Subpoena Two) should have been enforced as written (with certain caveats). Upon remand, the Court of Appeals also directed this Court to apply a good cause balancing test on the necessity and/or terms of a Confidentiality Order and gave further instructions, which are well-taken by this Court.

On November 26, 2010, Respondent filed a Motion for Hearing, and on November 29, 2010, this Court entered an Order requiring the parties to meet and confer and file a status report by December 16, 2010, setting forth the areas of agreement and disagreement (if any) so as to narrow the issues before this Court. The parties thereafter filed a joint status report (doc. no. 37) stating that they were unable to agree on either the appropriateness and/or the terms of a Confidentiality Order or the issue of Subpoena compliance.

In an effort to fully implement the directives of the Court of Appeals, and because the filings of the EEOC lacked specificity as to what items it requests at this time, the Court ordered further briefing on the subject, and proposed Orders of

Court.  After further briefing, on March 7, 2011, the Court ordered the parties to file a Joint Status Report on the status of the proceedings related to the underlying charge of discrimination in Sandy v. Kroger Food Stores, Charge No. 533-2007-01236.  On March 14, 2011, the parties filed a Status Report setting forth that the investigation of the EEOC remains open.  The EEOC stated, "after the initial charge was filed and some initial investigation, EEOC's investigation has been awaiting disposition or resolution of the instant subpoena enforcement action, brought by EEOC against Kronos Incorporated ("Kronos").  Doc. No. 49.  The matter is now ripe for resolution.

B.  Underlying Charge

On July 3, 2007, Vicky Sandy, who is a Caucasian woman with a hearing and speech impairment, filed a charge of disability discrimination against Kroger Food Stores ("Kroger" or "The Kroger Company") under the Americans with Disabilities Act ("ADA").  The charge, titled Sandy v. Kroger Food Stores, Charge No. 533-2007-01236, alleges that Sandy was subjected to discrimination on the basis of disability when Kroger failed to hire her for the position of cashier/bagger in Clarksburg, West Virginia, because of her hearing/speech impairment.

According to the EEOC, when applicants are interviewed for hire, Kroger administers a Personality Assessment Test ("Assessment"), which is created by

Kronos. The Assessment claims to "measure[] the human traits that underlie strong service orientation and interpersonal skills such as: Controlling impatience; Showing respect; Listening attentively; Work well on a team; [and] Being sensitive to others' feelings." Doc. No. 2 at 3 (other citations omitted). The EEOC alleges that the test results for Sandy indicated that she would not be a good choice for the position of cashier/bagger because she failed the "communications" section of the Assessment (her score on the Assessment was 40%).

According to Kroger's "position statement" in response to Sandy's charge, the store manager, Bob Bowers, interviewed Sandy for the open position and determined that he "had difficulty in understanding [Sandy's] verbal responses to questions" and found her responses to be "garbled and at times inaudible and unintelligible." Doc. No. 1-5 at 3. Bowers allegedly discussed Sandy's low score on the Assessment and her lack of job experience with her. *Id*.

On January 16, 2008, the EEOC sent Kroger a request for information ("RFI") seeking several categories of documents related to the Assessment, including requests for validity studies going back to January 1, 2007. Doc. No. 1-6. On March 11, 2008, when Kroger responded, but failed to provide all of the information requested, the EEOC issued a third-party Administrative Subpoena to non-party, Kronos. Doc. Nos. 1-7 and 1-8.

C. Text of Original Subpoena (hereinafter "Subpoena One")

In Subpoena One, dated March 11, 2008, the EEOC sought the following:

1. Produce any and all documents and data constituting or related to validation studies or validation evidence pertaining to Unicru [a subsidiary of Kronos] and/or Kronos assessment tests purchased by The Kroger Company, including but not limited to such studies or evidence as they relate to the use of the tests as personnel selection or screening instruments.

2. Produce the user's manual and instructions for the use of the Assessment Tests used by The Kroger Company.

3. Produce any and all documents (if any) related to The Kroger Company, its use of the Assessment Tests, and any validation efforts made regarding any and all jobs at the Kroger Company.

4. Produce any and all documents discussing, analyzing or measuring potential adverse impact on people who have disabilities.

5. Produce any and all documents related to job analysis performed by any person or entity related to any or all positions at The Kroger Company.

Doc. No. 1-8.

On March 21, 2008, Kronos filed a petition to revoke Subpoena One pursuant to 29 C.F.R. § 1601.16(b) on the basis that the documents in question were irrelevant to the EEOC Charge and constituted Kronos' commercial trade secrets. Doc. No. 1-13.

D. <u>The EEOC Expands Scope of Investigation</u>

In undated letter, the EEOC notified Kroger that it was expanding the scope of the ADA investigation. The letter to Kroger stated, in pertinent part, as follows:

> Based upon its authority, the EEOC's Pittsburgh Area Office hereby serves notice that the above referenced charge has been expanded to include the issue of disability with respect to the use of assessment tests in hiring (class) during the period August 1, 2006 to the present and for all facilities in the United States and its territories.

Doc. No. 1-10.

Supposedly, on the basis of the discovery of an article, co-written by a Kronos employee, which indicated that minority applicants performed worse than non-minority applicants on the Kronos Assessment, and on the basis of its "charge database" which allegedly contained complaints against Kroger alleging failure to hire on the basis of both disability and race, the EEOC once again sent Kroger a letter (dated May 30, 2008) stating that the EEOC was expanding its charge to include disability *and* race discrimination "with respect to the use of Assessment

Tests including but not limited to the Kronos Dependability – Customer Service Combo Assessment in hiring (class) for the period beginning from the date such test(s) were implemented by the Respondent through the present and for all facilities in the United States and its territories." Doc. No. 1-11.

E. <u>Text of Subpoena No. TPI-864 (hereinafter "Subpoena Two")</u>

On October 7, 2008, the EEOC revoked Subpoena One, and issued Subpoena Two, Subpoena No. TPI-864, directing that Kronos:

1. Produce any and all documents and data constituting or related to validation studies or validation evidence pertaining to Unicru and/or Kronos assessment tests purchased by The Kroger Company, including but not limited to such studies or evidence as they relate to the use of the tests as personnel selection or screening instruments.

2. Produce the user's manual and instructions for the use of Assessment tests used by The Kroger Company[.]

3. Produce any and all documents (if any) related to the Kroger Company, including but not limited to *correspondence, notes, and data files, relating to Kroger Compan*y; its use of the Assessment Test; *results, ratings, or scores of individual test takers*; and any validation efforts made thereto.

4. Produce any and all documents discussing, analyzing or measuring potential adverse impact on people with disabilities *and/or an individuals [sic] race*.

5. Produce any and all documents related to *any and all* job analysis performed by any person or entity related to any or all position at the Kroger Company.

> 6. *Furnish a catalogue which includes each and every assessment offered by Unicru/Kronos. Additionally provide descriptions of each assessment.*

Doc. No. 1-9 (any changes/additions between the text of Subpoena One and Subpoena Two have been italicized).

F. Petition to Revoke Subpoena Two

Kronos filed a Petition to Revoke Subpoena Two pursuant to 29 C.F.R. § 1601.16(b) stating that it is substantially similar to, but broader than, Subpoena One, which the EEOC revoked pursuant to "administrative error." Doc. No. 1-12. Kronos took the position that the EEOC's request for the "results, ratings, or scores of individual test-takers" was "extraordinarily overbroad" in that it "could potentially cover hundreds of thousands of current and former Kroger employees and job applicants, who applied for positions at any of Kroger's over 2,400 supermarket locations at any time." Kronos also stated that the "[c]ompliance with this request would require Kronos to expend very substantial resources, time and money." [2] Doc. No. 1-12.

However, on January 7, 2009, the EEOC denied (by decision of Executive Officer Stephen Llewellyn) Kronos' Petition to Revoke Subpoena Two and Kronos was ordered to comply with Subpoena Two by February 9, 2009. After a series of

---

[2] The Court finds that contrary to the arguments of the EEOC (doc. no. 48), Kronos has not waived any arguments related to cost-shifting analysis. The issue of cost shifting will be analyzed in Section III(C) below.

emails and letters, Kronos took the position that it would not respond to Subpoena Two, and on March 19, 2009, the EEOC filed its Motion for Order to Show Cause at Miscellaneous Docket No. 09-mc-79.

### G. Text of Subpoena Two Order as "Redrafted" by the Court

As summarized hereinabove, after extensive briefing on this matter, on June 1, 2009, this Court entered its Order granting in part and denying in part the EEOC's application to enforce Subpoena Two against Kronos. The Court "re-drafted" Subpoena Two, to place certain limitations as to scope, time, and geography. As rehearsed, the Court was careful to state that, while anything beyond the scope of the re-drafted Subpoena was not relevant, the EEOC was free to re-apply after the conclusion of discovery for any additional specific documents.

The text of Subpoena Two, as "redrafted" by the Court, is set forth below.

1. Produce any user's manual and instructions for the use of the Assessment Tests provided to The Kroger Company.

2. Produce any and all documents and data, including but not limited to correspondence, notes, and data files, relating to The Kroger Company; The Kroger Company's use of the Assessment Tests; results, ratings, or scores of individual test-takers at The Kroger Company; and any validation efforts performed specific for and only for The Kroger Company.

3. Produce any and all documents discussing, analyzing or measuring potential adverse impact on individuals with disabilities, relating specifically to and only to The Kroger Company.

4. Produce any and all documents related to any and all job analyses created or drafted by Kronos relating to the bagger, stocker, and/or cashier/checker positions at The Kroger Company.

5. Furnish any catalogue provided to The Kroger Company.

6. Items 1 through 5 are limited to the time period of January 1, 2006 through May 31, 2007, in the state of West Virginia, for the positions of bagger, stocker, and/or cashier/checker.

Doc. No. 16.

In its June 1, 2009 Order, this Court also ordered the parties to enter into an appropriate Confidentiality Order. Doc. No. 16. On July 22, 2009, when the parties failed to agree on the necessity and/or language of a Confidentiality Order, the Court adopted Kronos' Proposed Order, with handwritten modification. Doc. No. 28.

H. Appeal of this Court's Order(s) on "Redrafted" Subpoena Two and Confidentiality Order and Resultant Rulings of the United States Court of Appeals for the Third Circuit

On July 28, 2009, the EEOC appealed the rulings of this Court at document nos. 16, 27, and 28. On September 8, 2010, the United States Court of Appeals for the Third Circuit issued its Judgment affirming in part and reversing in part the June 1, 2009 Order, and vacating and remanding the July 22, 2009 Order. This

Court received the Mandate of the United States Court of Appeals for the Third Circuit on November 9, 2010.

     1. <u>Holdings of the Court of Appeals Regarding Compliance with Subpoena Two</u>

In its 24 page opinion, the Court of Appeals found that this Court "applied too restrictive a standard of relevance in limiting the information related to geography, time, and job position." The Court of Appeals also found that this Court "erred in limiting the EEOC's access to user's manuals and instructions, validation information, and materials pertaining to potential adverse impact on individuals with disabilities." Doc. No. 32-1.

The Court of Appeals held that under the relevance standard, as set forth in *EEOC v. Shell Oil Co.*, 466 U.S. 54 (1984), Subpoena Two could cover *all* retail positions at Kroger. Further, as to this Court's rulings setting forth certain geographical limitations on Subpoena Two, the Court of Appeals found that all data on hiring *nationwide* was appropriate. Also, as to this Court's rulings narrowing the temporal limits of Subpoena Two, the Court of Appeals found that "[e]vidence related to the employment practices under investigation prior to and after Sandy's charge provide valuable context that may assist the EEOC in

determining whether discrimination occurred." Doc. No. 32-1 at 15 (case citations omitted).[3]

The Court of Appeals reversed this Court's judgment insofar as it limited the scope of Subpoena Two "in terms of geography, time, and job description." Doc. No. 32-1 at 17. The Court of Appeals also reversed this Court's Order limiting the "EEOC's access to validation efforts conducted solely on behalf of Kroger, documents relating to potential adverse impact on disabled individuals to those relating specifically and only to Kroger, and user's manuals and instructions for the Assessment that were actually provided to Kroger." *Id.*

As for the EEOC's decision to extend Subpoena Two to include an investigation of race discrimination under Title VII, and this Court's decision to eliminate that language from the "redrafted" Subpoena, the Court of Appeals agreed with this Court and stated: "The charging party is a disabled white female who has complained of disability discrimination. We are unprepared to hold that a reasonable investigation of that charge can be extended to include an investigation of race discrimination." *Id.* at 19. The Court of Appeals concluded that Subpoena Two, to the extent it sought information related to race discrimination, "constitutes an impermissible 'fishing expedition.'" *Id.* at 19 (citations omitted).

---

[3] Although the Court of Appeals did not quantify a specific number of years as being appropriate, it stated "although the relevance requirement does impose temporal limits on the scope of the EEOC's inquiry, the duration of Kroger's use of the Kronos test falls within the scope of information that might cast light on the practice under investigation." Doc. No. 32-1 at 15.

2. <u>Holding of the Court of Appeals regarding Confidentiality Order</u>

The Court of Appeals found that this Court did not conduct "the required good cause balancing test" before entering the Confidentiality Order in this case and that the Order entered by this Court was "wide reaching." *Id*. at 32-1, 21. The Court of Appeals stated that upon remand, this Court must apply the good cause balancing test as set forth in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 783 (3d Cir. 1994). Further, the Court of Appeals instructed this Court, upon remand, to be mindful of the statutory scheme governing disposal of government records citing the Federal Records Disposal Act ("FRDA"). *Id*. at 32-1, 23.

I. <u>Procedural Posture Upon Remand</u>

In an endeavor to fully implement the directives of the Court of Appeals, this Court sought input from the parties and ordered them to meet and confer face-to-face and submit a Joint Status Report indicating matters as to which agreement has been reached, and indicating each point of disagreement by December 16, 2010. The Court received the parties Joint Status Report, which indicated that the parties still had not reached any agreement on the issues of the underlying Subpoena Compliance and/or the appropriateness and/or terms of a Confidentiality Order. Doc. No. 37. The parties therefore submitted dueling proposed orders at

document nos. 38 and 40 regarding Confidentiality Order and at document nos. 42 and 44 regarding Subpoena Compliance.

On December 29, 2010, and February 8, 2011, the Court ordered further briefing in an attempt to determine the positions of the parties as to what documents shall be required to be produced (as opposed to the EEOC's position that documents required by Subpoena are all documents listed in Subpoena Two - - "as modified by the United States Court of Appeals for the Third Circuit") (see doc. no. 40). The parties briefed the issues, and were given more than adequate opportunity to address each other's contentions on the issues of compliance, confidentiality, and cost-shifting. Doc. Nos. 46 and 48.

Lastly, on March 7, 2011, the Court ordered the parties to file a Joint Status Report setting forth the status of the underlying charge in Sandy v. Kroger Food Stores. On March 14, 2011, the parties filed their Joint Status Report and the EEOC stated that it performed "some initial investigation," but that it "has been awaiting disposition or resolution of the instant subpoena enforcement action . . . ." Doc. No. 49.

J.  Text of the EEOC's Proposed Order Accompanying Subpoena
   ("Subpoena Three")

Instead of filing a new Subpoena purporting to modify Subpoena Two in a

manner consistent with the Opinion of the Court of Appeals, the EEOC filed a

"Proposed Order" (doc. no. 42) which essentially seeks to substantially expand the

scope of Subpoena Two.  On January 30, 2011, the EEOC set forth the following

by Proposed Order, which the Court will refer to as "Subpoena Three:"

> 1. Within thirty (30) days of entry of this Order, Kronos shall
> produce any and all documents and data constituting or related to
> validation studies or validation evidence *pertaining to any customer
> of Kronos that has used* the Unicru and/or Kronos assessment tests
> *that were also used* by The Kroger Company. Such materials shall
> include, but are not limited to, *all* studies or evidence as they relate
> to the use of the tests as personnel selection or screening
> instruments; all user's manuals and instructions for the use of the
> Assessment Tests that were used by The Kroger Company; *all test
> development materials*; *all job analyses*; *all formal validation
> studies*; and *any other materials related to any customer of Kronos
> that is relevant to test validation. Production of the above items
> may be in hard form if the data does not exceed 500 pages. If it
> does exceed 500 pages, production shall be in electronic format
> (PDF).*
>
> 2. *No later than 90 (ninety) days after production of the above
> items, unless EEOC notifies Kronos in writing that it need not
> produce anything further, Kronos shall designate one or more
> individuals with knowledge of their databases, electronic storage
> systems, and contents therein and shall make those individuals
> available to confer in person or via telephone (with counsel
> present) with EEOC counsel and technical personnel to discuss the
> logistics of production of any and all results, ratings, or scores of
> individual test-takers; and any validation efforts made thereto.
> Within 30 (thirty) days of such meeting, Kronos shall electronically
> produce any and all results, ratings, or scores of individual test-*

takers and any validation efforts made thereto. If satisfactory arrangements for production cannot be made in that thirty (30) day timeframe, EEOC may file a motion with the Court to resolve conflicts between the parties or to address any alleged non-cooperation or non-compliance by Kronos.

When required to produce the data described in this paragraph, Kronos will produce in an electronic form that is reasonably usable in SAS statistical analysis software. Though the parties will discuss the particulars of data production, including the form of production and form and contents of Kronos's data systems, Kronos shall produce at least the following data fields (to the extent they exist) related to Kroger test-takers for the period that Kroger has used the test:

(a) last name;
(b) first name;
(c) middle name or initial;
(d) test date;
(e) the precise text of the test items and the test-taker's corresponding answers;
(f) test score and/or percentage (including scores on each subpart and any relevant scoring algorithms);
(g) test result (green, yellow, red, pass, fail, or any other classifications);
(h) work location or facility sought;
(i) testing location;
(j) job title or classification sought;
(k) home address;
(l) city of residence;
(m) state of residence;
(n) ZIP code of residence; and
(o) Social Security Number, or if social security number does not exist, any other unique numerical identifier (for database construction purposes) and date of birth (to facilitate witness location).

EEOC may also move for production of additional, relevant data fields that it discovers during the course of the parties' discussions concerning Kronos's data systems.

*3. Within thirty (30) days of entry of this Order*, Kronos shall produce any and all documents discussing, analyzing or measuring potential adverse impact on individuals with disabilities.

*4. EEOC may file a motion with the Court at any time for production of any and all additional* documents and data, including but not limited to correspondence, notes, and data files, relating to the Kroger Company *or* its use of the Assessment Test.

*5. EEOC will not disclose any documents or information derived from documents produced pursuant to EEOC Subpoena No. TPI-864 and this Order to Vicky Sandy or her agents during the investigation of her charge, nor will EEOC disclose such documents or information derived from them to Vicky Sandy or her agents after closing the investigation unless she or her agents file a Freedom of Information Act (FOIA) request. If EEOC receives a FOIA request from Vicky Sandy or her agents after closing the investigation, this Order shall not apply to the request and the request shall be governed solely by the FOIA, other applicable federal statutes, and the Commission's implementing regulations at 29 C.F.R. Part 1610, including the predisclosure notification procedures for confidential commercial information at 29 C.F.R. § 1610.19.*

*6. EEOC is authorized to disclose materials or information derived from materials produced pursuant to EEOC Subpoena No. TPI-864 (as modified by the Court of Appeals for the Third Circuit) to outside experts retained by EEOC. EEOC need not disclose the identity of such person(s) to Kronos, but EEOC shall provide such information to the Court under seal. The experts whom EEOC identify to the Court, and any adjuncts of those experts, shall execute an agreement to refrain from disclosing to anyone outside of the EEOC any materials or information derived from materials provided by the EEOC that were produced pursuant to EEOC Subpoena No. TPI-864, and such agreements shall be filed under seal with the Court.*

*7. The Court will retain jurisdiction to order further production of materials responsive to Subpoena No. TPI-864 consistent with the*

*terms set forth above and to otherwise enforce the terms of this
order.*

Doc. No. 42 (emphasis added)(any changes to Subpoena Two are set forth in
italics).


    K.  <u>Text of Kronos' Proposed Order</u>

    Kronos also submitted to this Court a Proposed Order setting forth its
current view on compliance with Subpoena Two as mandated by the Opinion of
the Court of Appeals (see doc. no. 44).  Notably, unlike the EEOC's Proposed
Order, Kronos used the same or very similar wording as the text of Subpoena Two
in its Proposed Order, with added explanatory language on implementation of the
Subpoena (including its production of documents to date) and the Confidentiality
Order (marked in italics).  Kronos' Proposed Order states as follows:

    1.  Documents or data constituting or related to validation studies of
evidence pertaining to Unicru/or Kronos assessments purchased by
Kroger, including studies or evidence relating to use of such tests as
personnel selection or screening instruments.

    *Subject to the confidentiality and other provisions of this Order,
Kronos shall produce data and documents, including: (a) reports
and presentations to Kroger regarding the use and benefits of the
assessments; (b) analyses of Kroger's use of the assessments; (c)
pilot studies of assessment deployment at Kroger, discussing
application, hiring and business utility; (d) assessment test
development and content, such as assessment specifications and
test-item analysis; (e) scoring logic and models; (f) renorming data
and analysis; and (g) memos discussing assessment strategy,
optimization and upgrades.*

*To the extent that any such materials contain information outside the scope of the Subpoena, as modified by the Third Circuit's decision, such as race data, that information shall be redacted.*

2. User's manual and instructions for the use of the assessment tests used by Kroger.

*Kronos previously produced documentation responsive to this request, based on this Court's Order, dated July 22, 2009. Subject to the confidentiality and other provisions of this Order, Kronos shall produce additional data and documents, including: (a) manuals and instructions for the use of assessment tests provided to or developed for Kroger; and (b) training materials provided to or developed for Kroger.*

3. Documents and data, including correspondence, notes and data files, relating to Kroger, its use of the assessment tests; results, rating or scores of individual test takers, and validation efforts made thereto.

*Kronos, previously produced documentation responsive to this request, based on this Court's Order, dated July 22, 2009. Subject to the confidentiality and other provisions of this Order, Kronos shall produce additional data and documents, including: (a) Kroger applicant records containing applicant testing data, test responses, assessment scores and positions applied for; (b) follow-up interview questions; (c) new hire data; (d) screen shots of the Kronos application/assessment experience at Kroger; (e) the assessments used by Kroger; (f) product descriptions and marketing collateral sent to Kroger; (g) Kronos observations and recommendations about Kroger staffing issues; (h) analysis of hiring date; and (j) Kroger requests for data to the Science Department (and Kronos responses).*

*To the extent that any such materials contain information outside the scope of the Subpoena, as modified by the Third Circuit's decision, such as race data, that information shall be redacted.*

4.   Documents discussing, analyzing, measuring potential adverse impact on individuals with disabilities and/or race.

*No adverse impact or validation studies have been performed by Kronos or, to Kronos' knowledge, by or for Kroger with respect to potential adverse impact on individuals with disabilities. Data concerning the potential disabilities of applicants has not and cannot lawfully be collected by employers. Kronos therefore has no such documents or data to produce.*

*Moreover, no validation studies of any kind have been performed for Kroger by Kronos. To the extent that Kronos performed any validation studies for other clients, it did so for the purpose of analyzing potential adverse impact on individuals based on race or protected status other than disability under Title VII of the Civil Rights Act or Executive Order 11246. Such validation documents, as well as any other documents discussing, analyzing, measuring potential adverse impact on individuals based on race are, pursuant to the decision of the Third Circuit, not enforceable under the Subpoena. Kronos therefore shall not produce adverse impact data, validation data or studies, or any other documents which discuss, analyze, address and/or measure potential adverse impact on individuals based on race.*

5.  Documents related to job analyses created or drafted concerning Kroger positions.

*Subject to the confidentiality and other provisions of this Order, Kronos shall produce data and documents concerning Kroger positions, including: (a) job analyses; (b) job descriptions; (c) assessment mapping; and (d) surveys.[4]*

Doc. No. 44 at 2-4.

---

[4] Like the EEOC, who did not include language regarding the "catalogue" as set forth in paragraph six (6) of Subpoena Two, Kronos also deleted paragraph six (6) of Subpoena Two, based upon the parties' agreement thereto.

II. <u>Standard of Review</u>

A. <u>Subpoena Compliance</u>

A subpoena enforcement proceeding is a summary process designed to expeditiously decide[5] whether a subpoena should be enforced. *E.E.O.C. v. Gladieux Refinery, Inc*., 631 F.Supp. 927 (N.D. 1986). The proceeding is not the proper time to litigate the merits of a claim, either procedurally or substantively. A district court should only examine the substance of the EEOC's underlying claim if the opposing party can show that there is no factual or legal support for the agency's preliminary determination to investigate. *E.E.O.C. v. Roadway Express*, 750 F.2d 40 (6th Cir. 1984). While the subpoena enforcement stage is not the proper time to determine the merits of the claim, a District Court must still satisfy itself that the information sought in the subpoena by the Commission is reasonable, relevant, and not overly broad. *United States v. Morton Salt Co*., 338 U.S. 632, 652-53 (1950).

The Commission's investigatory power is not limited by the Federal Rules of Civil Procedure. Rather, 15 U.S.C. §§ 49 and 50 and 29 U.S.C. § 209 are the source of the Commission's investigative power, and the appropriate statutes for enforcement of the EEOC's subpoena.

Title 15, U.S.C. § 49, provides in pertinent parts:

---

[5]The Court notes that it promptly ruled on the enforcement of "Subpoena Two" (filed March 19, 2009), on June 1, 2009.

[T]he Commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purposes of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and the Commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation.

As the Court of Appeals previously stated in its Opinion in this case, in order to enforce an administrative subpoena, agencies including the EEOC must demonstrate that: (1) its investigation has a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the agency does not already possess the information requested; (4) the agency has complied with relevant administrative requirements; and (5) the demand is not "unreasonably broad or burdensome." Doc. No. 32-1 at 11 citing *Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003)(other citations omitted).

While the relevance requirement is not particularly arduous, the EEOC's power of investigation is still anchored to the charge of discrimination, and courts may not construe the charge and relevance requirements so broadly as to grant the EEOC "unconstrained investigative authority." Doc. No. 32 at 11 quoting *EEOC v. Shell Oil*, 466 U.S. 54, 68-69 (1984) (other citations omitted). The purpose of the relevance requirement is to "cabin the EEOC's authority and prevent fishing expeditions." *Id.* quoting *EEOC v. United Air Lines*, 287 F.3d 643, 653 (7th Cir. 2002).

B. <u>Confidentiality Order</u>

The Court of Appeals set forth this Court's standard of review on the issue of confidentiality.  This Court has "inherent equitable power" to grant an order of confidentiality upon a showing of good cause.  Doc. No. 32-1 at 20, quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785-86 (3d Cir. 1994).  The party seeking an Order justifying confidentiality has the burden to establish with specificity that "disclosure will work a clearly defined and serious injury to the party seeking closure." *Pansy*, 23 F.3d at 786, citing *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984).

In *Pansy*, the Court of Appeals elucidated several factors which this Court must consider when attempting to balance public interests versus private interests.  Pursuant to this Court's duty to apply a "good cause balancing test," the following factors must be weighed and considered:

(1) Whether disclosure will violate any privacy interests;

(2) Whether the information is being sought for a legitimate purpose or an improper purpose;

(3) Whether disclosure of the information will cause a party embarrassment;

(4) Whether confidentiality is being sought over information

    important to public health and safety;

(5) Whether the sharing of information among litigants will

    promote fairness and efficiency;

(6) Whether a party benefitting from the order of confidentiality is

    a public entity or official; and

(7) Whether the case involves issues important to the public.

Doc. No. 32-1 at 21, quoting *Glenmade Trust Co. v. Thompson*, 56 F.3d 476, 483

(3d Cir. 1995), citing *Pansy*, 23 F.3d at 787-791.


III.   <u>Discussion</u>

    A. <u>Subpoena Two Compliance</u>

        1.   <u>Rulings of the Court of Appeals Regarding Subpoena Two</u>

    The Court of Appeals conducted an extensive analysis on the issue of

whether the items sought by the EEOC in Subpoena Two were relevant to a

legitimate purpose, and has already concluded that most of the items sought in

Subpoena Two were proper and relevant to the charge at hand.  Of course, this

Court will not revisit those issues as they are the law of the case.  As detailed more

thoroughly hereinabove, the Court of Appeals for the Third Circuit reversed this

Court's prior position of limiting the scope of the "redrafted" Subpoena on the

basis of time, geography and job description. Moreover, the Court of Appeals found that this Court erred in narrowing the scope of Subpoena Two, "rather than enforcing it as written." Doc. No.32-1 at 12.

Further, the Court of Appeals reversed this Court's limiting of the EEOC's access to (i) validation efforts conducted solely on behalf of Kroger, (ii) documents relating to potential adverse impact on disabled individuals to those relating to specifically and only to Kroger, and (iii) user's manuals and instructions for the Assessment that were actually provided to Kroger. The Court of Appeals found that documents within the scope of Subpoena Two are relevant to a legitimate investigation, beyond the documents set forth in this Court's "re-drafted" Subpoena Two. The Court of Appeals did not find the added racial investigation to be proper and legitimate under the facts of this case.

2.   Analysis of Proposed Order(s) of EEOC ("Subpoena Three")

This Court finds that through its filings of the Proposed Orders at document nos. 40 and 42 ("Subpoena Three"), the EEOC has taken the position of the Court of Appeals, and has translated it into something beyond what the Court of Appeals pronounced in its Opinion. In what this Court has termed "Subpoena Three," the EEOC suggests a new and *much* broader Order substantially expanding the scope of Subpoena Two, without the filing of a new Subpoena. Much of the language in the new Proposed Order of the EEOC at document no. 42 does not grow out of

Subpoena Two, nor does it flow from the decision of the Court of Appeals. In fact, the Proposed Order at document no. 42 seeks to substantially broaden the language of Subpoena Two.

### (a) Paragraph One of "Subpoena Three" - - Expansion to Include "Any Customer of Kronos"

For example, in paragraph one of its Proposed Order (Subpoena Three), the EEOC proposes that "Kronos shall produce any and all data and documents constituting or relating to validation studies or validation evidence pertaining to <u>any customer of Kronos</u>" (emphasis added) that has used the same assessment Kroger uses, " including all studies or evidence [relating to] the use of these tests as personnel selection or screening instruments," "all job analyses" (whether of Kroger or some other employer positions), "all formal validation studies," and "any other materials related to any customer of Kronos that is relevant to test validation." Doc. No. 42 at 1.

As Kronos has argued, and this Court agrees, the above language far exceeds the terms of Subpoena Two (as reviewed by the Court of Appeals). The language of Subpoena Two requests job analysis "crafted or drafted concerning Kroger positions." Further, Subpoena Two requests for document and data relating to the use of the Assessment is also limited to Kroger. The language in paragraph one of Subpoena Three ignores the limitations placed upon Subpoena Two by the Court of Appeals regarding category of discrimination. The language of paragraph one

would essentially require Kronos to produce documents which relate, for example, to race and gender discrimination - - which are areas far beyond the scope of Subpoena Two as reviewed by the Court of Appeals.

The documents to be produced under Subpoena Three include: job analyses of positions at companies other than Kroger (outside the scope of Subpoena Two); race and gender impact analysis (outside the scope of Subpoena Two); and certain validation information, not specific to Kroger, which is interwoven with the race and gender impact analysis, for non-Kroger positions (outside the scope of Subpoena Two).

(b) Paragraph Two of "Subpoena Three" (at Doc. Nos. 40 and 42)

Further, paragraph two of the EEOC's Proposed Order at document no. 40 is also a change to its Subpoena Two and is not expressly limited to Kroger (and to Kroger employees and/or applicants) as is required under the language of Subpoena Two. While Paragraph two of the EEOC's Proposed Order, at doc. no. 40, specified that production of results, rating or scores of individual test-takers at Kroger would be deferred until EEOC notified Kronos that further production was required, Paragraph Two of the Proposed Order at document no. 42 differs because it requires Kronos, within 90 days after initial production, to identify a technical expert, confer about the logistics of production of test-taker results, ratings or scores, and related validation efforts and within 30 days thereafter to produce these

materials, subject to the EEOC filing a motion with the Court to resolve "conflicts between the parties or to address any alleged non-cooperation or non-compliance by Kronos."

The Court agrees with Kronos that the reference to "validation efforts" as subject to electronic production with applicant data is not appropriate because validation studies are already addressed in Paragraph One of "Subpoena Three."

Furthermore, the data fields listed in Paragraph Two of document no. 42 would improperly disclose the identities of and personal information of the individual test takers (including names, addresses and social security numbers). Production of identifying data for individual test takers is neither described nor is it contemplated by Subpoena Two, which seeks only production of "results, ratings, or scores of individual test-takers." Doc. No. 1-10. To require the disclosure of the personal data of millions of non-party test-takers at this juncture, coupled with requiring the "organizing" of the data into the EEOC-directed formatting, when EEOC has not even articulated how the requested information could support a charge of disability discrimination is not proper, is overbroad, and is unduly burdensome to Kronos.

### 3. Conclusions Regarding Subpoena Three

In essence, with the filing of its Proposed Orders at doc. nos. 40 and 42, the EEOC is attempting to create a third Subpoena by adding language beyond the

scope of Subpoena Two as reviewed by the Court of Appeals. This Court rejects this attempt to expand Subpoena Two to include all information, tests and studies of *all other companies* ("pertaining to any customer of Kronos that used the . . . assessment tests that were also used by The Kroger Company.").

From the outset, this Court had concerns over the breadth of this investigation and the purpose/intent of the information requested by the EEOC. The Proposed Orders submitted by the EEOC (doc. nos. 40 and 42) heighten, rather than allay, this Court's concerns about the intent of the EEOC. It now seeks not only data regarding validation studies or validation evidence pertaining to Kroger's use of the tests, but the EEOC also seeks validation studies or validation evidence pertaining to "any customer of Kronos that has used the Unicru and/or Kronos Assessment tests." Doc. No. 42. The focus seems to be directed toward the Respondent testing company and not The Kroger Company. In other words, Sandy's charge appears to be just a way to target testing and the testing company, Kronos, whether or not the information related to The Kroger Company or Sandy. This conclusion is reinforced by the EEOC's failure to move forward with the investigation of Sandy's charge and the evaluation of the merits thereof. See doc. no. 49.

Further, it appears that the EEOC is now seeking to investigate (and gather information about) not only Kronos, as the testing company, and its services to The

Kroger Company, but *all employers* who use the Kronos Assessment tests, through the enforcement of an Administrative Subpoena in a miscellaneous action before this Court. This Court appreciates the statement of the Court of Appeals that the EEOC may access "any material that might cast light on the allegations against the *employer*." Doc. No. 32-1 at 11 (citing *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68-69 (1984)). This Court also is mindful that "the EEOC's power of investigation is anchored to the charge of discrimination, and the EEOC does not enjoy 'unconstrained investigative authority.'" Doc. No. 32-1, citing *Shell Oil*, 466 U.S. at 64-65 (other citations omitted).

As the Court of Appeals stated, "it is entirely appropriate for the EEOC to investigate Kroger's use of the Assessment," but whether it is appropriate to seek validation studies pertaining to *any customer* that has used the Unicru/Kronos Assessment tests (like the "Kroger" test), and gather personal information about countless "test-takers," is quite another matter. Doc. No. 32-1 at 13.

Through the attached Order, this Court has attempted to carry out the dictates of the Court of Appeals by enforcing Subpoena Two "as written." Doc. No. 32-1 at 12. To the extent, however, that certain portions of Subpoena Two as discussed by the Court of Appeals are not enforceable, this Court has deleted and/or changed certain language in Subpoena Two as set forth in the accompanying Order.

B.  Confidentiality Order

The Court of Appeals found that this Court entered a "wide-reaching" Confidentiality Order, without conducting a good cause balancing test and therefore, vacated this Court's Confidentiality Order (doc. no. 28).  The Court will now proceed to discharge its duty in this regard by considering and weighing the factors set forth under *Pansy* and its progeny.  *Pansy,* 23 F.3d 772; *Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995); *Miller v. Indiana Hosp*., 16 F.3d 549 (3d Cir. 1994).

Under *Pansy*, the Court is required to:

> [b]alance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. When the risk of harm to the owner of [a] trade secret or confidential information outweighs the need for discovery, disclosure [through discovery] cannot be compelled . . . .

*Pansy*, 23 F.3d 772, 787.

As rehearsed, this Court must balance and weigh the following factors: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of

confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. See Doc. No. 32-1 at 21, quoting *Glenmade Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995), citing *Pansy*, 23 F.3d at 787-791.

The following factors weigh in favor of the entry of a Confidentiality Order: (1) disclosure of the information sought by the EEOC would certainly violate privacy interests of potentially millions job applicants, and (2) would potentially cause the job applicants embarrassment; (3) the information is not critical to public health or safety; and, (4) Kronos (and presumably the job applicants as well) as the party benefitting from the entry of a Confidentiality Order, is not a public entity or official.

Perhaps the most compelling factor in favor of a Confidentiality Order is that the privacy interests of Kronos would be protected and their trade secrets and/or proprietary information would be kept "confidential." Were these Assessment materials to become public, the potential harm and damage to the business of non-party Kronos would be significant. *EEOC v. C & P Telephone*, 813 F.Supp. 874, 875 (D.D.C. 1993)(tests and validation materials pursuant to Administrative Subpoena must be produced, subject to a Confidentiality Order. Court was unconvinced that "internal procedures" of EEOC are sufficient to protect confidential materials from dissemination).

On the other hand, factors that weigh against the entry of a Confidentiality Order include: (1) the fact that the information being sought may be primarily for legitimate purposes; (2) the sharing of information among litigants might promote efficiency and fairness; and (3) this case involves issues which are important to the public.

While the EEOC continues to take the position that a Confidentiality Order is not necessitated in this case, after considering and weighing all of the above factors, this Court disagrees and finds that good cause exists to necessitate the entry of a Confidentiality Order. However, after further consideration, the Court has revised the prior Confidentiality Order hopefully consistent with the direction of the Court of Appeals and has substantially limited the terms of the Confidentiality Order to address the concerns of the parties. Notably, the Court has removed from its Order the provisions that the confidential material not be entered into a centralized database, and that the notes or memoranda made by the EEOC shall be destroyed within ten (10) days after a notice of right to sue is issued by EEOC. The Court in general has used the language suggested by the EEOC (see doc. no. 42) with additional safeguards suggested by Respondent in light of the trade secret information of Respondent and personal data of the test takers.

C. Cost Shifting/Cost Sharing

As the Court of Appeals previously stated, the EEOC has the burden of demonstrating that its investigation is relevant to a legitimate purpose. In addition, the EEOC must also establish that its demand for information is not unreasonably broad or burdensome. *Univ. of Med & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003) (other citations omitted); *United States v. Westinghouse Elec. Corp.*, 788 F.2d 164, 166 (3d Cir. 1986).

The opinion of the Court of Appeals does not specifically address whether the information requested by the EEOC in Subpoena Two was unduly burdensome, with respect to the internal and external cost of compliance to Kronos. Moreover, the issue of whether the additional information requested by the EEOC in "Subpoena Three" was unreasonably burdensome is also unresolved. Accordingly, the Court finds it necessary to analyze these issues, albeit with the backdrop of Fed. R. Civ. Pro. 45.

This Court is guided by the pronouncements of the Court of Appeals for the Third Circuit, in *United States v. Friedman*, 532 F.2d 928 (3d Cir. 1976), which was a case involving summons brought by the United States on behalf of the Internal Revenue Service against banks and accountants to enforce summonses issued in connection with tax examinations of two taxpayers and a corporation.

In *Friedman*, the Court of Appeals held that a district court has the power to mandate the government to reimburse a subpoena recipient for the reasonable cost of production. While recognizing that Fed. R. Civ. Pro. 45, regarding non-party compliance with a Subpoena in civil litigation, "does not literally apply," to the factual setting in that case, the Court of Appeals counseled that Rule 45 "serves as significant precedent disclosing a broad congressional judgment with respect to fairness in subpoena enforcement proceedings." *Id.* at 937. [6]

Again, within the context of Rule 45, in *United States v. CBS*, 666 F.2d 364, 371-72 (9th Cir. 1982), the Court of Appeals for the Ninth Circuit discussed the need to protect non-parties from significant production expenses:

> Although party witnesses must generally bear the burden of discovery costs, the rationale for the general rule is inapplicable where the discovery demands are made on nonparties. Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party. Although we decline to curtail district courts' discretion over the discovery process by adopting the formal guidelines favoring nonparty reimbursement advocated by the studios, we nevertheless emphasize that a witness's nonparty status is an important factor to be considered in determining whether to allocate discovery costs on the demanding or producing party.

*Id.* at 371-72.

---

[6] The topic of e-discovery issues relating to Electronically Stored Information (ESI) and the costs of compliance with third party subpoenas in the context of civil litigation has garnered recent attention, especially with the advent of the new Fed. R. Civ. Pro. Rule 45(d)(1)(D).

The 1991 amendments to Rule 45 made it mandatory to protect non-parties from significant compliance costs. Subsequent to the advent of the 1991 amendments, numerous Courts have addressed the assessment of undue burden and costs on non-parties. *See Cusumano v. Microsoft* Corp., 162 F.3d 708, 717 (1st Cir. 1998)(third party has no duty to subsidize litigation to which it is not a party); *Daimler Truck No. America, LLC v. YounsessiU*, 2008 WL 2519845 (W.D. Wash. June 20, 2008)(Court should seek a compromise between need for the information and burden on the party); *United States v. Amerigroup Illinois, Inc*. 2005 WL 3111972 (N.D. Ill Oct. 21, 2005).

As the Court of Appeals held over 35 years ago in *Freidman*, this Court finds that the protections of non-parties set forth in Rule 45 and issues surrounding cost shifting to be informative and instructive to the instant issues.

Kronos argues that the costs of production of the documents (both internal and external costs) will be exorbinant, and that the EEOC, not Kronos, should shoulder the financial burden of complying with the Subpoena, a Subpoena which Kronos views as overbroad. Doc. No. 46 at 6. On the other hand, the EEOC argues that Kronos waived any argument regarding cost shifting, and in any event, the shifting of costs is not appropriate because Kronos, as a "sophisticated purveyor of tools that assist employers in managing their workforce," should have reasonably expect to bear these costs as part of doing business. Doc. No. 48 at 11.

This Court will take under advisement the positions of both parties, and will order the parties, by April 15, 2011, to file a Joint Status Report setting forth the estimated cost to Kronos of compliance with the Order of this Court attached hereto. If the parties cannot agree on the cost figure (and the allocation thereof), each party shall file their respective cost estimate of Kronos' compliance with said Order of Court, with supporting affidavit(s) (including affidavit(s) of any outside vendors and/or experts), and suggested allocation thereof. The Court thereafter will rule on the cost-shifting issue.

IV.    Conclusion

For the reasons set forth hereinabove, on the underlying issue of Subpoena Compliance, the Court will decline the EEOC's invitation to re-write or re-draft Subpoena Two, and to enforce the EEOC's Proposed Order at document no. 42, thus creating Subpoena Three. Instead, the Court will enforce Subpoena Two as written, with slight modifications, and in conformance with the decision of the United States Court of Appeals for the Third Circuit. The timetable for the production will be established after the Court rules on the cost-shifting issue.

Furthermore, after conducting the balancing test set forth in *Pansy*, the Court finds that good cause exists for entering appropriate confidentiality provisions in the Compliance Order.

SO ORDERED, this 21st day of March, 2011

\s Arthur J. Schwab
Arthur J. Schwab
United States District Court Judge

cc: All Registered ECF Counsel and Parties